# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ROBERT H. WALTER, JR., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 4:14-CV-57 JAR |
| | ) |
| KEVIN PYATT, PAUL WEST, and | ) |
| THE CITY OF WENTZVILLE, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Rule 12(b)(6) Motion to Dismiss ("Motion" ECF No. 9). This matter is fully briefed and ready for disposition.

## BACKGROUND

Plaintiff alleges the following facts in his Third Amended Petition (Third Amended Petition for Damages ("Third Amended Petition"), ECF No. 4), which the Court assumes are true for purposes of deciding the Motion for Summary Judgment.

Defendant Kevin Pyatt was employed by Defendant City of Wentzville as Captain of its Police Department. (Third Amended Petition, ¶6). Defendant Paul West was employed by Defendant City of Wentzville as a Major of its Police Department. (Third Amended Petition, ¶7). Pyatt and West are both sued in their individual and official capacities. (Third Amended Petition, ¶¶6-7).

Plaintiff was employed by Defendant City of Wentzville as a patrolman with its police department from July 2000 through November 2012. (Third Amended Petition, ¶8). Plaintiff was involved in the police union, including the position of shop steward. (Id.). Plaintiff alleges that "Pyatt and West made it known to Plaintiff and other Wentzville police officers that they did

not want the police union involved in the affairs of the City of Wentzville Police Department." (Third Amended Petition, ¶9).

In October 2012, Plaintiff sought employment as a Park Ranger with the City of St. Peters, Missouri ("St. Peters"). (Third Amended Petition, ¶10). Plaintiff told Pyatt and West that he intended to seek employment with the St. Peters Ranger Enforcement Division. (Id.) Lee Smith, a Lieutenant for St. Peters' Ranger Enforcement Division, was responsible for hiring for the St. Peters Park Ranger position. (Third Amended Petition, ¶¶11-12).

On December 10, 2012, Plaintiff passed the written examination and the physical examination for the St. Peters Park Ranger position. (Third Amended Petition, ¶¶14-15). On December 13, 2012, Plaintiff completed his oral interview for the St. Peters Park Ranger position. (Third Amended Petition, ¶17). On December 17, 2012, Plaintiff completed his integrity interview. (Third Amended Petition, ¶19). On December 21, 2013, Mr. Smith called Plaintiff and scheduled his polygraph for January 3, 2013. (Third Amended Petition, ¶¶20-21). The polygraph would have been the final step of the hiring process for the St. Peters Park Ranger position. (Third Amended Petition, ¶20).

As of December 21, 2013, Plaintiff understood that he was the only applicant under consideration for the St. Peters Park Ranger position and that he would be hired upon completion of the polygraph test and the drug screening test. (Third Amended Petition, ¶22).

On or about January 2, 2013, Pyatt and West contacted individuals with St. Peters and made statements that Plaintiff was a union troublemaker in an effort to undermine Plaintiff's application for the St. Peters Park Ranger position. (Third Amended Petition, ¶¶23-24).

On January 2, 2013, the St. Peters Human Resources Department called Plaintiff and told him that his polygraph test was cancelled and he was no longer in contention for the St. Peters Park Ranger position. (Third Amended Petition, ¶26).

On June 5, 2013, Plaintiff filed this action in the Circuit Court of St. Charles County, Missouri, alleging common law tort claims against Defendants the City of Wentzville, Pyatt, and West. (ECF No. 1, ¶1). Plaintiff filed his Third Amended Petition on December 17, 2013, which added claims under 42 U.S.C. §§1983, 1985(3). (ECF No. 1, ¶2). Defendants removed this action on January 14, 2014, based upon federal question jurisdiction. (ECF No. 1). In the Third Amended Petition, Plaintiff alleges claims for Violation of 42 U.S.C. §1983 (Retaliation for Exercise of First Amendment) in Count I, Violation of 42 U.S.C. §1985(3) (Conspiracy to Retaliate for Exercise of First Amendment) in Count II, Tortious Interference with Business Expectancy in Count III, Conspiracy to Tortiously Interfere with Business Expectancy in Count IV, Libel in Count V, and Conspiracy to Commit Libel in Count VI. Counts I and II are against the City of Wentzville, Pyatt, and West, and Counts III-VI are against only Pyatt and West.

## **STANDARD OF REVIEW**

Under the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading standard Rule 8 announces does not require "detailed factual allegations," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In ruling on a motion to dismiss, the district court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted); see also Eckert v. Titan Tire

Corp., 514 F.3d 801, 806 (8th Cir. 2008) (citing Luney v. SGS Auto. Servs., Inc., 432 F.3d 866, 867 (8th Cir. 2005)). Only well-pleaded facts are accepted as true, while threadbare recitals of the elements of a cause of action, naked assertions devoid of factual enhancement, and legal conclusions are not. Ashcroft, 556 U.S. at 678. "[L]egal conclusions can provide the framework of a complaint, [but] they must be supported by factual allegations." Id. at 679. To survive a motion to dismiss, a complaint must contain sufficient well-pleaded facts to state "a claim to relief that is plausible on its face." Id. at 678 (quotation omitted). A claim has facial plausibility when the well-pleaded facts allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. If the well-pleaded facts do not plausibly entitle the plaintiff to relief, the claim should be dismissed. Id.

## DISCUSSION

### I. COUNT I FOR RETAILIATION FOR EXERCISE OF FIRST AMENDMENT IN VIOLATION OF 42 U.S.C. §1983 AGAINST CITY OF WENTZVILLE, PYATT AND WEST

In Count I, Plaintiff purports to state a First Amendment adverse employment claim under §1983 against the City of Wentzville, Pyatt and West. "To establish a prima facie case of retaliation, a plaintiff must allege and prove that: (1) she engaged in activity protected by the First Amendment; (2) the defendant took an adverse employment action against her; and (3) the protected conduct was a substantial or motivating factor in the defendant's decision to take the adverse employment action." Davison v. City of Minneapolis, Minn, 490 F.3d 648, 654-55 (8th Cir. 2007)(citing Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274, 287 (1977). "If the plaintiff meets this burden, the burden shifts to the defendant to demonstrate that the same employment action would have been taken in the absence of the protected activity." Davison, 490 F.3d at 655 (citing Mt. Healthy, 429 U.S. at 287).

### A. City of Wentzville[1]

In general, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents" on a *respondeat superior* theory of liability. Monnell v. New York Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Rather than relying strictly on a theory of *respondeat superior,* a plaintiff seeking to impose liability on a government entity under § 1983 must identify a "policy" or "custom" of the entity that caused the violation of the plaintiff's constitutional rights. Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 403 (1997). "The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Id. at 404.

Defendants assert that the City of Wentzville cannot be liable under §1983 for the acts of its employees under *respondeat superior*. Defendants argue that Plaintiff does not allege that the "City of Wentzville sanctioned or ordered Defendant's [sic] Pyatt and West to call St. Peters' Police Department." (Motion, ¶14). Defendants further contend that Plaintiff's "bare assertion that the call was made 'pursuant to a policy'" is insufficient under the pleading requirements of Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). (Motion ¶14 (citing Third Amended Petition, ¶29); Defendants' Reply in Support of their Rule 12(b)(6) Motion to Dismiss ("Reply"), ECF No. 13, ¶4). Defendants note that

---

[1] Plaintiff alleges claims against Pyatt and West in their individual and official capacities. (Third Amended Petition, ¶¶6, 7). Any claims against Pyatt and West in their official capacities are addressed in the discussion of the claims against their employer, the City of Wentzville. See Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999)(citing Kentucky v. Graham, 473 U.S. 159, 165 (1985))("A suit against a public employee in his or her official capacity is merely a suit against the public employer.").

Plaintiff does not allege that Pyatt or West had any policymaking authority. (Motion, ¶15). In fact, Plaintiff alleges that Pyatt and West did not have authority to make personnel decisions. (Id. (citing Third Amended Petition, ¶¶6, 7); Reply, ¶6). Defendants assert that Plaintiff has alleged that Pyatt and West's conduct was pursuant to a City of Wentzville policy (Third Amended Petition, ¶29), yet also incongruously alleged that Pyatt and West were acting in violation of the City of Wentzville Policy Manual, which provided that confidential personnel matters could not be disclosed without the approval of a supervisor (Third Amended Petition, ¶¶6-7, 24). (Reply, ¶6). Finally, Defendants assert that the City of Wentzville cannot be liable under §1983 because Plaintiff alleges that the statements regarding him were not related to any official business of the City. (Motion, ¶16 (citing Third Amended Petition, ¶16)).[2]

Plaintiff asserts that he has pleaded facts that demonstrate that a City of Wentzville policy violated his constitutional or statutory rights. First, Plaintiff pleaded that Defendants retaliated against him for union activities protected by the First Amendment and the National Labor Relations Act. (Response to Defendants' Rule 12(b)(6) Motion to Dismiss ("Response"), ECF No. 12, at 2)(citing Third Amended Petition, ¶¶24-25, 28-29)). Second, Plaintiff alleged that the retaliation was pursuant to the City of Wentzville's union retaliation policy. (Response at 2 (citing Third Amended Petition, ¶29)). Plaintiff alleged that the City of Wentzville's Policy Manual does not allow Pyatt and West to be involved in personnel matters without the approval of a supervisor. (Response at 2 (citing Third Amended Petition, ¶¶6-7, 24)). Plaintiff contends

---

[2] In their Reply, Defendants argue that "Plaintiff claims specifically that the Officers do not have final policymaking authority in personnel matters, as they need supervisory approval. Taking plaintiffs['] assertion as true, the City of Wentzville cannot be held liable for their conduct under 42 U.S.C. §1983 because the Officers have no final policymaking authority." (Reply, ¶7). This argument misses that point. Whether the officers have any policymaking authority does not address the liability of the City of Wentzville. Rather, if the officers are bound by a City of Wentzville policy, the City of Wentzville would be liable under §1983, regardless of whether the officers were involved in the policymaking.

that if Pyatt and West were not allowed to be involved in personnel matters, then their actions must have been ordered or sanctions by the City of Wentzville. (Response at 2).

The Court finds that Plaintiff sufficiently alleges a City of Wentzville policy caused the violation of his First Amendment rights. Plaintiff alleges in his Third Amended Petition that Pyatt and West retaliated against Plaintiff for his exercise of his free speech and the right to peacefully assemble pursuant to a "policy of the City of Wentzville" contrary to such activities. (Third Amended Petition, ¶29). The Court finds that, contrary to Defendants' argument,[3] the City of Wentzville's alleged policy of retaliation for exercising the right to free speech and peacefully assemble is not at odds with the City of Wentzville's Policy Manual's provision that disclosure of confidential personnel matters required the approval of a supervisor (Third Amended Petition, ¶24). The Court construes Plaintiff as pleading that Pyatt and West contacted Mr. Smith at St. Peters pursuant to an unwritten City of Wentzville retaliatory, anti-union policy, and that such action must have been sanctioned by the City of Wentzville through Pyatt and West's supervisors pursuant to the City of Wentzville's Policy Manual (Third Amended Petition, ¶24). At this stage of the litigation, the Court finds these allegations state sufficient facts to support a §1983 claim for retaliation for Plaintiff exercising his First Amendment rights. Although Plaintiff's pleadings could have been more detailed and clear, the Court finds that he sufficiently alleges the City of Wentzville's unwritten, anti-union policy provides the basis for §1983 liability.

---

[3] As previously stated, Defendants contend that the alleged City of Wentzville's policy of retaliation for exercising the right to free speech and peacefully assemble (Third Amended Petition, ¶29) is incongruous with the City of Wentzville's Policy Manual requirement that confidential personnel matters could not be disclosed without the approval of a supervisor (Third Amended Petition, ¶24).

### B. Pyatt and West

Defendants contend that Count I fails as to Pyatt and West in their individual capacities because they are entitled to qualified immunity and because they cannot state a cause of action under §1983.

"Qualified immunity shields public officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." Brown v. City of Golden Valley, 574 F.3d 491, 495 (8th Cir. 2009). When the defense of qualified immunity has been asserted, the Court evaluates (1) whether defendants violated plaintiff's constitutional rights and (2) whether those rights were clearly established. Chambers v. Pennycook, 641 F.3d 898, 904 (8th Cir. 2011). If no constitutional violation occurred, the evaluation ends there. See Crumley v. City of St. Paul, 324 F.3d 1003, 1008 (8th Cir. 2003). For the purposes of step two, "clearly established" means "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Either step of the qualified immunity inquiry may be addressed first. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

Defendants contend that the §1983 claims against Pyatt and West in their individual capacities are barred by qualified immunity. Defendants assert that for them to be liable for Count I "existing statutory or case law would have to state that discussions with the potential employer of a former, pro-union employee would violate that former employee's First Amendment right to engage in union activity, even when the former employee suffered *no adverse employment action while participating in a union* before voluntarily resigning." (Motion, ¶21 (emphasis in original)). Defendants refer the Court to R.S. Mo. §590.118.1, "All

completed investigations of alleged acts of a peace officer shall be made available to any hiring law enforcement agency." Defendants maintain that, based upon §590.118.1, R.S. Mo., an officer would have reasonably believed that communicating with a hiring agency (the City of St. Peters) would not have violated Plaintiff's rights. (Motion, ¶22). Defendants argue that a reasonable official would not believe that discussions with a potential employer would violate the union rights of the former employee, particularly when the former employee voluntarily left his position. (Motion, ¶23).

Defendants further argue that Plaintiff has not alleged that he suffered an adverse employment action in retaliation for his union activity during his employment with the City of Wentzville. (Motion, ¶25). Plaintiff voluntarily ended his employment with the City of Wentzville prior to Pyatt and West making their alleged statements to Mr. Smith. Defendants, therefore, state that Plaintiff cannot allege a material change in his employment with the City of Wentzville based upon Defendants' actions. (Id.)

In response, Plaintiff argues that Pyatt and West violated Plaintiff's First Amendment rights and a federal law because of Plaintiff's involvement in union activities. (Response at 2-3). Plaintiff notes that the Wentzville Policy Manual precluded Pyatt and West from discussing personnel matters without the authority of a supervisor. (Third Amended Petition, ¶24). Plaintiff also asserts that the St. Peters Park Department did not solicit a reference from Pyatt and West. (Response at 3). Plaintiff was no longer employed by the City of Wentzville at the time the telephone calls were made. Plaintiff contends that the "sole purpose of the phone calls was in retaliation for union activities and to assure Plaintiff was not hired by the City of St. Peters." (Id.)

As an initial matter, the Court finds that Plaintiff states a cause of action under §1983 for First Amendment retaliation. Plaintiff has alleged that he engaged in activity protected by the First Amendment, *i.e.*, union organizing. Plaintiff also alleges that he had an adverse employment action taken against him because of his union organizing: Plaintiff alleges that he was not hired as a City of St. Peters Park Ranger because Pyatt and West told St. Peters that Plaintiff was a union troublemaker. The Court finds that this sufficiently alleges that Plaintiff was not hired by a potential employer based upon his union activities. Defendants have not stated any basis for the Court to differentiate an adverse employment action taken by Defendants from an adverse employment action taken by third party based upon malicious information provided by Defendants. Thus, the Court finds that Plaintiff's allegation that an adverse employment action was caused by Defendants states a retaliation claim under §1983. Plaintiff sufficiently states a claim for retaliation even though he was no longer employed by the City of Wentzville based upon his alleged lost future employment as a St. Peters Park Ranger.

Further, the Court holds, at this stage of the litigation, that Pyatt and West are not protected by qualified immunity. Defendants attempt to portray their statements regarding Plaintiff as a mere reference to a future employer, which may be permitted by statute, §590.118.1, R.S. Mo. However, Plaintiff alleges that Pyatt and West's statements were more nefarious than a mere reference. First, there is no allegation that Defendants' communications related to a "completed investigation" of Plaintiff under R.S. Mo. §590.118.1. Thus, the claims in Plaintiff's Third Amended Petition, as alleged, would not entitle a reasonable officer to believe that he was acting according to that statute. Rather, Plaintiff alleges that Pyatt and West made an unsolicited telephone call to Plaintiff's potential employer at St. Peters for the sole and malicious purpose of disparaging him. Plaintiff has alleged such activity was done not as part of

an employment reference but as retaliation for union activities. The Court finds that the right to have employment decisions made absent any retaliation for his union involvement was clearly established. See, e.g., Rankin v. McPherson, 483 U.S. 378, 383 (1987) ("[i]t is clearly established that a state may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech."). At this stage of the litigation and based upon Plaintiff's allegations, the Court finds that Pyatt and West are not immune from suit based upon qualified immunity. The Court denies the motion to dismiss Count I.

## II.     COUNT II: 42 U.S.C. §1985(3)

To state a claim under the equal protection provisions of the first part of § 1985(3), Plaintiff must allege (1) a conspiracy, (2) for the purpose of depriving another of the "equal protection of the laws, or of equal privileges and immunities under the laws;" (3) an act in furtherance of the conspiracy; and (4) an injury to a person or property, or the deprivation of a legal right. Griffin v. Breckenridge, 403 U.S. 88, 102–03 (1971); Federer v. Gephardt, 363 F.3d 754, 757-58 (8th Cir. 2004); 42 U.S.C. § 1985(3). "A §1985(3) private conspiracy 'for the purpose of depriving ... any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws,' requires an intent to deprive persons of a right guaranteed against private impairment." Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 274, 113 S. Ct. 753, 762, 122 L. Ed. 2d 34 (1993)(quoting United Bhd. of Carpenters & Joiners of Am. v. Scott, 463 U.S. 825, 833 (1983)). "A claim under this part of the section also requires proof of a class-based animus." Griffin, 403 U.S. at 102. In addition, Plaintiff "must allege that an independent federal right has been infringed." Federer, 363 F.3d at 758; Farber v. City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006) (A "plaintiff must allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the

discrimination against the identifiable class was invidious."). That is, "Section 1985 is a statute which provides a remedy, but it grants no substantive stand-alone rights." Federer, 363 F.3d at 758. "The source of the right or laws violated must be found elsewhere." Id. (citing United Bhd. of Carpenters & Joiners of Am. v. Scott, 463 U.S. 825, 833 (1983); Great Am. Fed. Sav. & Loan Ass'n. v. Novotny, 442 U.S. 366, 376 (1979)); Farber, 440 F.3d at 134 (§1985(3) "does not create any substantive rights, but permits individuals to enforce substantive rights against conspiring private parties").

Defendants maintain that Count II does not allege the elements of a §1985(3) claim because there are no references to equal protection rights or rights related to privileges or immunities. (Motion, ¶29). Further, Defendants argue that §1985(3) does not apply to union-related disputes. (Motion, ¶30 (citing United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott, 463 U.S. 825, 839 (1983)("group actions generally resting on economic motivations [such as unions] should be deemed beyond the reach of § 1985(3)"). Finally, Defendants assert that the doctrine of *respondeat superior* does not apply to actions under §1985(3) and, therefore, the claim against the City of Wentzville (and the claims against Pyatt and West in their official capacities) must fail. (Motion, ¶31 (citing Adams v. Pate, 445 F.2d 105, 107 (7th Cir. 1971)("Where monetary damages, as distinguished from equitable relief, is sought under the provisions of the Civil Rights Act the doctrine of *respondeat superior* does not apply; personal involvement of the defendant is required.")).

In response, Plaintiff argues that Scott does not preclude his cause of action under §1985. (Response at 3). Plaintiff contends that Scott merely held that, in order to prevail under §1985, it must be proven that there is a conspiracy to infringe on a First Amendment right and the state is involved in the conspiracy. Scott, 463 U.S. at 830. Plaintiff argues that, unlike Scott, this case

involves the state and not a private conspiracy. Thus, Plaintiff maintains that if there is a conspiracy to violate Plaintiff's First Amendment rights, and the municipality was involved in the conspiracy, then Plaintiff states a claim under §1985. (Response at 3).

The Court finds that the holding of Carpenters v. Scott is more limited than Plaintiff claims. In Scott, the Supreme Court held that non-union employees were not a protected class, and narrowly interpreted the classes protected under §1985. The Supreme Court expressly held that it could not "construe § 1985(3) to reach conspiracies motivated by economic or commercial animus." Scott, 463 U.S. at 838; see also Scott, 463 U.S. at 837 ("Even if the section must be construed to reach conspiracies aimed at any class or organization on account of its political views or activities, ... we find no convincing support ... for the proposition that the provision was intended to reach conspiracies motivated by bias toward others on account of their *economic* views, status or activities.")(emphasis in original); Herhold v. City of Chicago, 723 F. Supp. 20, 34-35 (N.D. Ill. 1989). The Court finds that Plaintiff fails to state a claim under §1985(3) because Plaintiff cannot demonstrate that he was a victim of a class-based animus on account of anything other than his union, or economic activities. Although Plaintiff attempts to distinguish this case from Scott because there is clearly state involvement, this distinction still does not permit a cause of action because Plaintiff is not a member of a class intended to be protected by §1985(3). See Scott, 463 U.S. at 837-38. The Court dismisses Count II of Plaintiff's Third Amended Petition.

### III. COUNT III-VI: VARIOUS STATE LAW CLAIMS AGAINST PYATT AND WEST

In Counts III-VI, Plaintiff alleges various state law claims against Pyatt and West only. Defendants contend that these counts are barred by official immunity.

"Under Missouri law, 'the doctrine of official immunity shields public officers and state officials from civil liability for injuries arising out of their discretionary acts, functions, or omissions performed in the exercise of their official duties.'" Hawkins v. Holloway, 316 F.3d 777, 788–89 (8th Cir. 2003) (quoting Harris v. Munoz, 43 S.W.3d 384, 387 (Mo.Ct.App. 2001)). The Missouri Supreme Court has explained "[a] ministerial function is one which a public officer is required to perform 'upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to [an employee's] own judgment or opinion concerning the propriety of the act to be performed.'" Charron v. Thompson, 939 S.W.2d 885, 886 (Mo.1996) (en banc) (quoting Rustici v. Weidemeyer, 673 S.W.2d 762, 769 (Mo.1984) (en banc)). Whether a state official's action "is discretionary or ministerial is a case by case determination to be made after weighing 'such factors as the nature of the official's duties, the extent to which the acts involve policymaking or the exercise of professional expertise and judgment.'" Id. (quoting Kanagawa v. State ex rel. Freeman, 685 S.W.2d 831, 836 (Mo.1985) (en banc)).

In addition, official immunity does not apply to discretionary acts done in bad faith or with malice. Hawkins, 316 F.3d at 789. "Bad faith or malice generally requires actual intent to cause injury." Blue v. Harrah's North Kansas City, 170 S.W.3d 466, 479 (Mo.Ct.App. 2005). "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." Id. (internal quotation marks omitted). Bad faith "embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also

embraces actual intent to mislead or deceive another." Id. (internal quotation marks omitted). The official immunity doctrine "can also be overcome by showing conscious wrongdoing." Id.

Defendants contend that Pyatt and West are entitled to official immunity for Plaintiff's state law tort claims, which are premised on the references or opinions they provided to Plaintiff's potential employer. (Motion, ¶¶38-44). Defendants argue that Pyatt and West were performing a discretionary act when they allegedly made statements that Plaintiff was a "union troublemaker." Id. Accordingly, Defendants contend that Pyatt and West have official immunity from suit on these claims.

In response, Plaintiff maintains that Pyatt and West are not protected by official immunity because the actions at issue were ministerial. Plaintiff responds that the City of Wentzville Policy Manual does not allow Pyatt or West to make personnel decisions without approval from a supervisor. (Response at 4). Therefore, Plaintiff contends that his allegations regarding Pyatt and West's statements to Plaintiff's potential employer cannot be considered discretionary, and Pyatt and West are not entitled to official immunity.

The Court finds that Pyatt and West's alleged comments are not protected by official immunity. The description of Plaintiff as a "union troublemaker" is necessarily a statement of an opinion, which is discretionary. There is no allegation that Pyatt and West's opinion statements were required or otherwise compelled to make such statements. In fact, Plaintiff alleges that these were "unsolicited libelous statements." (Third Amended Complaint, ¶30).

Even though the Court finds that Pyatt and West's comments were premised on discretionary conduct, however, Defendants still are not protected by official immunity.[4]

---

[4] In the alternative, if the Court found that Pyatt and West's statements were made as a "ministerial function" because they were in obedience to the mandate of legal authority, pursuant to the City of Wentzville's Policy Manual (see Third Amended Complaint, ¶29), then Pyatt and

Plaintiff's state law claims are premised on Pyatt and West's bad-faith conduct. Plaintiff maintains that the "sole purpose of the phone calls was in retaliation for union activities and to assure that Plaintiff was not hired by the City of St. Peters." (Response at 3). Plaintiff specifically alleges that Pyatt and West's actions were undertaken in bad faith or with malice. (Third Amended Petition, ¶33). As such, Pyatt and West are not entitled to official immunity because their actions (even if discretionary) were done in bad faith or with malice. See Hawkins, 316 F.3d at 789; Blue, 170 S.W.3d at 479. Thus, Plaintiff's state law claims are not barred by official immunity.

### IV. PUNITIVE DAMAGES

Defendants assert that Plaintiff's claim for punitive damages fails because Plaintiff has not stated a cognizable cause of action for compensatory damages. (Motion, ¶9). As detailed above, the Court finds that Plaintiff states causes of action under §1983 and for various state law torts. Therefore, Plaintiff states causes of action for compensatory damages, and his claim for punitive damages cannot be dismissed on this basis.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Rule 12(b)(6) Motion to Dismiss [9] is **DENIED**, in part, and **GRANTED**, in part. Count II is dismissed with predjuce.

Dated this 30th day of May, 2014.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE

---

West likewise would not be entitled to official immunity. See Charron, 939 S.W.2d at 886. Although the Court believes Pyatt and West's statements were made pursuant to a discretionary function, the Court's finding does not change the result because discretionary functions that are performed with malice are not entitled to official immunity.